UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| VS. | ) | CR06-0133-01 ML |
| | ) | |
| RONALD HOPKINS | ) | |

---

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO PRODUCE CONFIDENTIAL INFORMANT

I. Updated Travel and Facts

In response to Mr. Hopkins's initial filing the government made two police officers and a number of recordings available to defense counsel. The content of the recorded phone calls does not change the basis for this request. Providence Police Detectives Fabio Zuena and Joseph Colonduano provided general background information regarding this drug sting operation and also some specific information about Mr. Hopkins's conduct within the sting.

As stated previously, this drug sting operation sought to arrest and prosecute crack cocaine dealers in the South Providence Lockwood neighborhood. The operation employed a confidential informant armed with a car wired for audio and video recording. The Providence Police managed the operation with Detective Zuena in the lead. Detective Colonduano, attached to a DEA task force, assisted Providence's efforts by providing manpower and monetary support. Additionally, the DEA supplied the confidential informant. The entire operation resulted in the arrest of 104 individuals. Seven defendants were selected for non-prosecution by the Providence Police and the RI Attorney General based on the extent of their criminal records and potential for rehabilitation. Approximately 90 defendants were sent to face charges in RI state court. The remainder were selected for prosecution in federal court and ultimately faced the draconian mandatory sentences and guideline ranges for the distribution of crack cocaine.

The police officers indicated that their confidential informant initially made contact with the

various dealers involved the sting through information known to the police, but eventually made most of his contacts through word of mouth referrals on the street. The CI came into contact with Mr. Hopkins in this manner. The CI knew Mr. Hopkins as "Swift" and arranged the June 16, 2006, transaction over the phone with Swift. Transactions which were small in drug weight and cash value were managed for the most part by Providence only. After the initial transaction, Detective Zuena reviewed the video recording and recognized Swift to be Mr. Hopkins. Detective Zuena knew Mr. Hopkins had a criminal record and believed him to be a violent and dangerous person. The CI continued to request and buy cocaine from Mr. Hopkins, but the amount requested was determined by the police officers.

In general, the police would investigate a target's background once he was identified from the video recording or other surveillance. Detective Colonduano confirmed that when they identified a target with a bad criminal record they would then apply resources to that target in an effort to get the target to sell larger and larger amounts of cocaine. The DEA became more involved with the larger transactions (½ ounce and greater) because it has more resources available for making controlled purchases of drugs than the Providence Police. Detective Zuena added, however, that many targets simply did not have the ability to sell larger amounts of cocaine. In Mr. Hopkins's case, the officers believed him to be a target warranting exposure to greater penalties based on his criminal record, reputation, and their belief he could provide larger drug amounts. The police then concentrated their efforts to increase his criminal liability. The result of that focus was the steady increase in the size of Mr. Hopkins's drug transactions until he made a delivery of over 50 grams of crack cocaine. Subsequently, the government selected Mr. Hopkins for federal prosecution based on his criminal history and the amount of drugs involved.

## II. Argument

Mr. Hopkins maintains his request for the government to produce the confidential informant. The government must disclose the identity of informants when they are material witnesses to an alleged criminal act. *See Roviaro*, 353 U.S. at 60-61; *United States v. Robinson*, 144 F.2d 104, 106-07 (1st Cir. 1998). *See also United States v. Perez*, 299 F.3d 1, 3-4 (1st Cir. 2002). There is no question that the CI here was an integral part of the crimes for which Mr. Hopkins has been charged.

As a part of the crimes, the CI possesses information which was not only relevant for determining Mr. Hopkins's guilt, but also his punishment. Mr. Hopkins has a Constitutional due process right to information material to his guilt and punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963).[1] Mr. Hopkins is entitled to this information and the government is obligated to produce such information.

The government stresses its concern for the CI's safety as a central reason for not producing him. Its concern is misplaced and overstated. The CI appeared in videos for over 100 different defendants without disguise, and continued to work as a CI after this operation ended. It is also believed that the CI's name has been common knowledge in the community since November, 2006. Further, Mr. Hopkins has been incarcerated for over 10 months, has pled guilty, and is facing a 20 year mandatory minimum sentence. These facts question the government's true concern for the CI's safety and also minify any perceived threat posed by Mr. Hopkins. Further, the government's concerns cannot trump Mr. Hopkins's Constitutional due process rights as confirmed by *Brady*.

The CI possesses information material to Mr. Hopkins's culpability and punishment. While the police officers did confirm much of the scenario proffered in Mr. Hopkins's initial memorandum, they could not speak for the CI. Neither Detective Zuena, nor Coloduano, could properly be described as the CI's handler. They supervised the CI in this operation but knew nothing about his prior training or particular undercover work other than he was a DEA asset. The CI's version of his participation in the operation and, in particular, his interaction with Mr. Hopkins is acutely material when considering the issue of sentencing factor manipulation. Additionally, the government has not provided the CI's criminal record, details of promises or inducements, or the manner and basis for the CI's payment; all mundane facts which can show the CI's individual biases and motives which in turn affected how he conducted himself in this operation. This information will show how the CI's activities and motives affected Mr. Hopkins's culpability which ultimately determines his sentence.

---

[1] "[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87.

III. Conclusion

Mr. Hopkins has requested exculpatory information which the government is obligated to produce in the course of due process as confirmed by *Brady*. What the defense desires is that the government produce the CI for an interview with defense counsel and make him available for possible testimony at Mr. Hopkins's sentencing. As a participant in Mr. Hopkins's crimes, the CI has unique perceptive knowledge of those events and his perceptions are material to Mr. Hopkins's ultimate punishment. The defense also requires the other particular information about the CI which bears on his bias, motives, and credibility. The government presents unfounded safety concerns as a reason for not producing the CI. The government's concerns, however, cannot defeat Mr. Hopkins's Constitutional right of due process. For all of these reasons the Court should grant this motion.

Respectfully submitted
Ronald Hopkins
By his attorney,

/s/ Kevin J. Fitzgerald, 5775
Assistant Federal Defender
10 Weybosset St., Ste. 300
Providence, RI 02903
(401) 528-4281
FAX 528-4285
kevin_fitzgerald@fd.org

CERTIFICATION

I hereby certify that a copy of this motion was delivered by electronic notification to Sandra Beckner, Assistant United States Attorney, on November 16, 2007.

/s/ Kevin J. Fitzgerald